**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES RAYMOND, successor in interest to decedent Augustus Joshua Crawford,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>WARREN MARTIN, et al.,<br><br>　　　　Defendants. | Case No.: 1:18-cv-00307 - DAD - JLT<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED IN FORMA PAUPERIS<br><br>ORDER DIRECTING PLAINTIFF TO FILE AN AMENDED COMPLAINT OR NOTIFY THE COURT OF HIS WILLINGNESS TO PROCEED ONLY ON CLAIMS FOUND TO BE COGNIZABLE |

　　　　James Raymond seeks to proceed *pro se* and *in forma pauperis* in this action as the successor in interest to his deceased son, Augustus Joshua Crawford. Plaintiff asserts officers with the Bakersfield Police Department were pursuing Crawford, who exited his vehicle "and began running from pursuing law enforcement officers in attempting to elude arrest." (Doc. 1 at 2-3) Plaintiff contends Warren Martin became enraged that he could not catch up to Crawford, so he shot Crawford in the back. (*Id.* at 2) Plaintiff asserts the defendants are liable for negligence, assault, battery, and violations of Crawford's civil rights arising under the Fourth and Fourteenth Amendments to the United States Constitution.

　　　　For the reasons set forth below, Plaintiff's motion to proceed *in forma pauperis* is granted. In addition, the Court finds Plaintiff alleges facts sufficient to support his claim for a violation of Crawford's constitutional rights to be free from the use of excessive force. However, he fails to allege cognizable claims under state law due to his failure to plead compliance with the Tort Claims Act.

1

Therefore, Plaintiff is instructed to either file a First Amended Complaint or notify the Court of his willingness to proceed only on the cognizable claim.

### I. Proceeding *in forma pauperis*

The Court may authorize the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such person . . . possesses [and] that the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a). The Court reviewed the financial status affidavit (Doc. 3), and finds the requirements of 28 U.S.C. § 1915(a) are satisfied. Therefore, Plaintiff's request to proceed *in forma pauperis* is **GRANTED**.

### II. Screening Requirement

When an individual seeks to proceed *in forma pauperis*, the Court is required to review the complaint and shall dismiss a complaint, or portion of the complaint, if it is "frivolous, malicious or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2).

A plaintiff's claim is frivolous "when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992). In other words, a complaint is frivolous where the litigant sets "not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

### III. Pleading Standards

General rules for pleading complaints are governed by the Federal Rules of Civil Procedure. A complaint must include a statement affirming the court's jurisdiction, "a short and plain statement of the claim showing the pleader is entitled to relief; and . . . a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a). The Federal Rules adopt a flexible pleading policy, and *pro se* pleadings are held to "less stringent standards" than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 521-21 (1972).

A complaint must state the elements of the plaintiff's claim in a plain and succinct manner. *Jones v. Cmty Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984). The purpose of a complaint is to give the defendant fair notice of the claims against him, and the grounds upon which the

complaint stands. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). The Supreme Court noted,

> Rule 8 does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). Conclusory and vague allegations do not support a cause of action. *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). The Court clarified further,

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Citation.] A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Citation.] The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [Citation.] Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). If factual allegations are well-pled, a court should assume their truth and determine whether the facts would make the plaintiff entitled to relief; conclusions in the pleading are not entitled to the same assumption of truth. *Id.*

The Court has a duty to dismiss a case at any time it determines an action fails to state a claim. 28 U.S.C. § 1915e(2). Accordingly, a court "may act on its own initiative to note the inadequacy of a complaint and dismiss it for failure to state a claim." *See Wong v. Bell*, 642 F.2d 359, 361 (9th Cir. 1981) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1357 at 593 (1963)). However, the Court may grant leave to amend a complaint to the extent deficiencies of the complaint can be cured by an amendment. *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc).

**IV.    Plaintiff's Standing**

    **A.    Survivor Claims**

"In a survival action, a decedent's estate may recover damages on behalf of the decedent for injuries that the decedent has sustained." *Davis v. Bender Shipbuilding & Repair Co.*, 27 F.3d 426, 429 (9th Cir. 1994). Plaintiff seeks to state a Section 1983 claim for violations of the Fourth and Fourteenth Amendments on behalf of his deceased son, Augustus Joshua Crawford. *See Hayes*, 736 F.3d at 1128-29. Survivors of an individual may bring claims arising under 42 U.S.C. § 1983 "if the

relevant state's law authorizes a survival action." *Hayes v. County of San Diego*, 736 F.3d 1223, 1228 (9th Cir. 2013) (quoting *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998)). "The party seeking to bring a survival action bears the burden of demonstrating that a particular state's law authorizes a survival action and that the plaintiff meets that state's requirements for bringing a survival action." *Id.*, 736 F.3d at 1228-29.

To determine whether a plaintiff may bring a survivor action, the Ninth Circuit instructs that the Court rely upon California Code of Civil Procedure Section 377.30 rather than Section 377.60. *Hayes*, 736 F.3d at 1129. In relevant part, Section 377.30 provides that "[a] cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest ... and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest." Cal. Code Civ. P. § 377.30. Thus, a Section 1983 survival claim may be prosecuted by a successor in interest "[w]here there is no personal representative for the estate" and "if the person purporting to act as a successor in interest satisfies the requirements of California law." *Tatum v. City & County of S.F.*, 441 F.3d 1090, 1093 n.2 (9th Cir. 2006).

California law requires any person seeking to commence an action pursuant to section 377.30 execute and file an affidavit setting forth that person's qualifications as a successor. Cal. Civ. Proc. Code § 377.32. *See also Nishimoto v. Cnty. of San Diego*, 2016 WL 8737349, at *4 (S.D. Cal. Nov. 4, 2016) (finding the plaintiff had sufficiently alleged she had standing to bring claims as successor in interest for her deceased son because she submitted a declaration that complied with the requirements of section 377.32). Specifically, California law provides:

> The person who seeks to commence an action or proceeding or to continue a pending action or proceeding as the decedent's successor in interest under this article, shall execute and file an affidavit or a declaration under penalty of perjury under the laws of this state stating all of the following:
>
> (1) The decedent's name.
>
> (2) The date and place of the decedent's death.
>
> (3) "No proceeding is now pending in California for administration of the decedent's estate."
>
> (4) If the decedent's estate was administered, a copy of the final order showing the distribution of the decedent's cause of action to the successor in interest.
>
> (5) Either of the following, as appropriate, with facts in support thereof:

4

> (A) "The affiant or declarant is the decedent's successor in interest (as defined in Section 377.11 of the California Code of Civil Procedure) and succeeds to the decedent's interest in the action or proceeding."
> (B) "The affiant or declarant is authorized to act on behalf of the decedent's successor in interest (as defined in Section 377.11 of the California Code of Civil Procedure) with respect to the decedent's interest in the action or proceeding."

Cal. Civ. Proc. Code § 377.32(a). In addition, the affiant must affirm that "[n]o other person has a superior right to commence the action or proceeding or to be substituted for the decedent in the pending action or proceeding." *Id.*, § 377.32(a)(6). A certified copy of the decedent's death certificate must be attached to the declaration. *Id.*, §377.32(c).

Plaintiff filed a declaration under penalty of perjury in which he identifies his late son's date of birth and asserts there are no proceedings currently pending relating to the administration of Crawford's estate. (Doc. 4 at 2, Raymond Decl. ¶¶ 1-3) He asserts that he was Crawford's father "and lawful successor in interest as defined by C.C.P. 377.11. (*Id.*, ¶ 5) Plaintiff also asserts that no one "has a superior right to commencing the action … or to be substituted for [Crawford] in the pending action." (*Id.*, ¶ 7) These affirmations are sufficient to under California law to establish that Plaintiff has standing as successor in interest to Crawford. *See Nishimoto*, 2016 WL 8737349 at *4; Cal. Civ. Proc. Code § 377.32(a). Plaintiff has also provided a certified copy of the death certificate as required by Section 377.32(c). (Doc. 4 at 4) Thus, the Court finds Plaintiff has standing to bring this action as a successor in interest to Crawford.

### B. Wrongful Death Claim[1]

"In a wrongful death action, the decedent's dependents … pursue claims for personal injuries they have suffered as a result of a wrongful death." *Davis*, 27 F.3d at 429. Standing to bring a wrongful death claim "is governed by California Code of Civil Procedure § 377.60, and the categories of persons eligible to bring wrongful death actions are strictly construed." *Medrano v. Kern County Sheriff's Officer*, 921 F.Supp. 1009, 1017 (E.D. Cal. 2013); *see also Hayes*, 736 F.3d at 1129 (explaining that standing for a wrongful death claim was determined by Section 377.60). In relevant part, Section 377.60 provides that a wrongful death claim may be brought by:

---

[1] It is not clear whether the plaintiff is seeking to assert a wrongful death claim. Thus, the Court is providing standards related to this claim assuming that this is the plaintiff's intention.

5

(a) The decedent's surviving spouse, domestic partner, children, and issue of deceased children, or, if there is no surviving issue of the decedent, the persons, including the surviving spouse or domestic partner, who would be entitled to the property of the decedent by intestate succession.

(b) Whether or not qualified under subdivision (a), if they were dependent on the decedent, the putative spouse, children of the putative spouse, stepchildren, or parents. As used in this subdivision, "putative spouse" means the surviving spouse of a void or voidable marriage who is found by the court to have believed in good faith that the marriage to the decedent was valid.

Cal. Code Civ. Pro. §377.60.

A plaintiff who brings a wrongful death suit as an heir must establish the absence of an issue by the decedent and plead facts sufficient to support a conclusion that the plaintiff has standing under Section 377.60. *See Nelson v. County of Los Angeles*, 113 Cal.App.4th 783, 789 (2004). A decedent's parents become heirs under the wrongful death statute when there is no surviving issue. *See* Cal. Prob. Code, § 6402(b); *Chavez v. Carpenter*, 91 Cal.App.4th 1433, 1440 (2001). However, "[r]egardless of their status as heirs, parents may sue for the wrongful death of their child if they were dependent on the decedent." *Chavez*, 91 Cal.App.4th at 1440 (quoting Code Civ. Pro. § 377.60(b)); *see also Foster v. City of Fresno*, 392 F.Supp.2d 1140, 1146 (E.D. Cal. 2005). Accordingly, "a parent may only assert a wrongful death claim if there are no children or issue or if . . . she is dependent on the decedent." *Foster*, 392 F. Supp.2d at 1146.

Significantly, a parent seeking to bring a wrongful death claim "must plead and prove standing," including affirmatively pleading that the "decedent had no issue." *Nelson v. County of Los Angeles*, 113 Cal. App. 4th 783, 789 (2003); *Coats v. K-Mart Corp.*, 215 Cal. App. 3d 961, 969 (1989). Plaintiff does not allege facts sufficient to support a conclusion that he was dependent upon his son or that Crawford did not have any children. Consequently, the Court is unable to find Plaintiff has standing to bring a wrongful death claim under California law.

**V.    Factual Allegations**

Plaintiff asserts that on November 6, 2017, near Planz Road and South H streets in Bakersfield, California, Bakersfield Police Officer Martin attempted to take Crawford into custody. (Doc. 1 at 2) He asserts that Crawford exited his vehicle "and began running from the pursuing law enforcement officers in attempt[] to elude arrest." (*Id.* at 3) According to Plaintiff, Officer Martin "became

6

enraged because he could no[t] physically 'catch-up' to [Crawford] and thereupon took out his gun and shot [Crawford] in the back 'eleven times.'" (*Id.*)

He alleges that "[a]t no time during" the encounter did Crawford "threaten [Officer Martin], or anyone else with fatal force or display of a threat of fatal force." (Doc. 1 at 3) In addition, he asserts Crawford did not take "a position or actions of attacking or threatening the Defendant, or other pursuing law enforcement officers, [or] members of the general public." (*Id.*) Instead, Plaintiff asserts that at all times Crawford "was attempting to flee from Defendant." (*Id.*)

Plaintiff contends Officer Martin "failed to communicate with … [Crawford] prior to using deadly force against him." (Doc. 1 at 5) Further, Plaintiff alleges that Officer Martin and other unidentified officers "failed to timely render and/or timely seek and/or [o]btain medical care or assistance" for Crawford after the shooting," and failed to "secure transportation [due] to a serious medical need." (*Id.* at 6) He asserts that Crawford "suffered serious injuries [i]including, eleven gun shots in the back and internal injuries resulting in his death." (*Id.* at 5)

## VI. Discussion and Analysis

Based upon the foregoing facts, Plaintiff contends the defendants are liable for violations of both California and federal law. (Doc. 1 at 4-7) Specifically, it appears Plaintiff seeks to bring state claims for negligence, assault, and battery; and claims under 42 U.S.C. §1983 for violations of the Fourth and Fourteenth Amendments. (*See id.* at 4, 6)

### A. The California Tort Claims Act

Under the California Tort Claims Act, a plaintiff may not maintain an action for damages against a public employee unless he timely filed a notice of tort claim.[2] Cal. Gov't Code §§ 905, 911.2, 945.4 & 950.2; *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995). Specifically, California Government Code § 945.4 provides,

> No suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented …until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board …

---

[2] To comply with the California Tort Claims Act, a notice must at a minimum, "identify the date, place, and other circumstances of the occurrence or transaction which gave rise to the claim asserted." Cal. Gov't Code § 910(c).

Thus, to raise these claims against the City and its employees, such as Officer Martin, Plaintiff must allege compliance with the presentation requirement of the California Tort Claims Act. *State of California v. Superior Court*, 32 Cal.4th 1234, 1243-44 (2004); *Snipes v. City of Bakersfield*, 145 Cal.App.3d 861, 865 (Cal. App. 1983).

When a plaintiff fails to allege compliance, it is fatal to the cause of action and results in the dismissal of the state law claim. *Willis v. Reddin*, 418 F.2d 702, 704 (9th Cir. 1969). Plaintiff does not allege that he made a claim prior to the commencement of this action or that the board acted upon his claim. Because Plaintiff failed to allege his compliance with the California Tort Claims Act, his state claims fail. *See State of California*, 32 Cal.4th at 1243.

**B.    Claims arising under 42 U.S.C. § 1983**

Plaintiff seeks to assert violations of Crawford's civil rights pursuant to 42 U.S.C. § 1983 ("Section 1983"), which "is a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Pursuant to Section 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

42 U.S.C. § 1983. To plead a Section 1983 violation, a plaintiff must allege facts from which it may be inferred that (1) a constitutional right was deprived, and (2) a person who committed the alleged violation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976).

A plaintiff must allege a specific injury was suffered, and show causal relationship between the defendant's conduct and the injury suffered. *See Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976). Thus, Section 1983 "requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff." *Chavira v. Ruth*, 2012 WL 1328636 at *2 (E.D. Cal. Apr. 17, 2012). An individual deprives another of a federal right "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do so that it causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). In other words, "[s]ome culpable action or in action must be attributable to

defendants." *See Puckett v. Corcoran Prison - CDCR*, 2012 WL 1292573, at *2 (E.D. Cal. Apr. 13, 2012). Plaintiff asserts the defendants are liable for the use of excessive force against Crawford and failure to provide medical care in violation of his constitutional rights. (Doc. 1 at 6-7)

### 1. Excessive force

The Supreme Court of the United States determined that the Due Process Clause of the Fourteenth Amendment protects individuals who have not yet been convicted of a crime "from the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 388 (1989). However, allegations that "law enforcement officials used excessive force in the course of a making an arrest" are analyzed under the Fourth Amendment, which prohibits arrests without probable cause or other justification. *Id.*; *see also Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994) ("the use of force to effect an arrest is subject to the Fourth Amendment's prohibition on unreasonable seizures").

The Supreme Court explained,

> As in other Fourth Amendment contexts . . . the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

*Graham*, 490 U.S. at 396-97 (1989) (internal citations omitted). The issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). In resolving this issue, the Ninth Circuit instructs courts to consider "the totality of the circumstances and . . . whatever specific factors may be appropriate in a particular case." *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010).

In *Graham*, the Supreme Court identified factors to be considered in evaluating whether the force used was reasonable, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985). In addition, the Court may consider "whether officers administered a warning, assuming it was practicable." *George v. Morris*, 736 F.3d 829, 837-38 (9th Cir. 2013) (citing *Scott v. Harris*, 550 U.S. 372, 381-82 (2007)). Ultimately, the "reasonableness" of the actions "must be judged from the

perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

Plaintiff alleges Crawford was attempting to evade arrest by running away from the officers but was not a danger to the public or offers. (Doc. 1 at 3) According to Plaintiff, Crawford did not threaten Officer Martin and "never took a position or actions of attacking or threatening the Defendant, or other pursuing law enforcement officers, members of the general public." (*Id.*) However, Plaintiff asserts Officer Martin shot Crawford eleven times in the back. (*Id.*) There is no indication that Crawford received any warning from an officer prior to the shots being fired. Accordingly, the Court finds the facts alleged are sufficient to state a claim for the use of excessive force against Officer Martin.

### 2. Failure to provide medical care

An individual in custody must rely upon officials for medical care, "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), (internal citation and quotation marks omitted). When an individual, such as Crawford, had not been convicted of a crime, the proper analysis of his rights occurs under "the more protective substantive due process standard" of the Fourteenth Amendment rather than the Eighth Amendment. *Jones v. Blanas*, 393 F.3d 918, 931-33 (9th Cir. 2004); *see also Gibson v. County of Washoe,* 290 F.3d 1175, 1187 (9th Cir. 2002) ("Because [the plaintiff] had not been convicted of a crime, but had only been arrested, his rights derive from the due process clause rather than the Eighth Amendment's protection against cruel and unusual punishment"). Regardless, with issues related to health and safety, "the due process clause imposes, at a minimum, the same duty the Eighth Amendment imposes." *Gibson*, 290 F.3d at 1187. Therefore, the Court looks to the Eighth Amendment to determine whether Crawford's right to adequate medical care was violated.

To state a cognizable claim for inadequate medical care, Plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. The Ninth Circuit explained: "First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's

response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)).

### a. Serious medical need

A serious medical need exists "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (quoting *Estelle*, 429 U.S. at 104). Crawford suffered fatal injuries as a result of the shooting, and Plaintiff has carried his burden to identify a serious medical need.

### b. Deliberate indifference

If a plaintiff establishes the existence of a serious medical need, he must then show that officials responded to that need with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In clarifying the culpability required for "deliberate indifference," the Supreme Court held an officer cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exits, and he must also draw that inference." *Farmer*, 511 U.S. at 837. Therefore, a defendant must be "subjectively aware that serious harm is likely to result from a failure to provide medical care." *Gibson*, 290 F.3d at 1193 (emphasis omitted). When a defendant should have been aware of the risk of substantial harm but was not actually aware, "then the person has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188.

When evaluating the actions of officers, the Ninth Circuit "found no authority suggesting that the due process clause establishes an affirmative duty on the part of police officers to render CPR in any and all circumstances." *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1415 (9th Cir. 1986). The Court explained: "Due process requires that police officers seek the necessary medical attention for a detainee when he or she has been injured while being apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital." *Id.* Thus, when police officers injured an individual through applying a choke hold and then drove the injured man to the hospital, the officers did not exhibit deliberate indifference to the medical need, though they did not attempt CPR and treatment was delayed until their arrival at the hospital. *See id.*

11

Plaintiff contends Officer Martin did not "immediately render medical treatment at the scene" after shooting Crawford and failed "to obtain prompt and immediate emergency medical attention." (Doc. 1 at 5) Given the number of times Crawford was shot, the facts alleged support a conclusion that Officer Martin was aware of the need for medical care and that death could result. Accordingly, the Court finds that the facts alleged are sufficient to support a claim for failure to provide medical care against Officer Martin.

### 3. Familial Association[3]

The Supreme Court explained: "[T]he freedom to enter into and carry on certain intimate or private relationships is a fundamental element of liberty protected by the Bill of Rights." *Board of Directors of Rotary Int'l v. Rotary Club*, 481 U.S. 537, 544 (1987). Consequently, the Ninth Circuit has recognized that "a parent has a constitutionally protected liberty interest in the companionship and society of his or her child." *Ward v. City of San Jose*, 967 F.2d 280, 283 (9th Cir. 1992); *see also Venerable v. City of Sacramento,* 185 F. Supp. 2d 1128, 1133 (E.D. Cal. 2002); *Ovando v. City of Los Angeles*, 92 F.Supp. 2d 1011, 1017 (C.D. Cal. 2000) ("parents of a decedent "have been found to have a constitutionally protected liberty interest in their familial relationship under the Fourteenth Amendment").

To state a claim for interference with familial rights under Section 1983, a plaintiff must allege "the defendant acted with deliberate indifference to these rights." *Venerable*, 185 F. Supp. 2d at 1131; *see also Byrd v. Guess*, 137 F.3d 1126, 1134 (9th Cir. 1998) ("to prove their Fourteenth Amendment claim, [plaintiffs] had to prove that the Officers acted with deliberate indifference to [their] rights of familial relationship"). This may be established where the officer's conduct "shock[ed] the conscience." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1989); *see also Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). The Ninth Circuit explained a court must first inquire "whether the circumstances are such that actual deliberation [by the officer] is practical." *Id.* The Court explained:

> Where actual deliberation is practical, then an officer's "deliberate indifference" may suffice to shock the conscience. On the other hand, where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate

---
[3] Once again, it is not clear whether the plaintiff is seeking to prosecute this action only on behalf of the estate or if he is attempting to assert his own damages.

law enforcement objectives.

*Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010).

Significantly, courts have determined "the parents of a decedent can recover under the substantive due process prong of the Fourteenth Amendment for a loss of familial association when an officer unreasonably kills a fleeing suspect." *Estate of Kasakoff v. City of San Diego*, 2010 WL 1759455 at *12 (S.D. Cal. Apr. 29, 2010); *Estate of Jacobo v. L.A. County*, 2011 WL 1522345 at *5 (C.D. Cal. Jan. 31, 2011) (explaining a loss of familial association claim may be derivative of another violation of the Fourteenth Amendment). Because it is not clear whether the plaintiff intends to state this claim, the Court offers no analysis of whether the facts alleged at present would do so.

### 4. Liability of the City of Bakersfield

It is unclear whether Plaintiff seeks to state claims against the City of Bakersfield in this action, as the City is not identified as a defendant in the caption of the complaint, and the factual allegations seem to refer to only Officer Martin. However, Plaintiff also states "The Defendant City of Bakersfield is a municipal corporation with within the State of California and at all times relevant hereto employed the Defendant [Officer Martin]." (Doc. 1 at 2) Accordingly, for purposes of evaluating Plaintiff's cognizable claims, the Court will assume Plaintiff intends to state claims against the City under Section 1983.

Significantly, "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. New York City Dep't. of Soc. Services*, 436 U.S. 658, 691 (1978). Thus, a local government unit may not be held responsible for the acts of its employees under a *respondeat superior* theory of liability. *Id.*, 436 U.S. at 691 ("a municipality cannot be held liable solely because it employs a tortfeasor"). Rather, a local government entity may only be held liable if it inflicts the injury of which a plaintiff complains through a governmental policy or custom. *Id.* at 694; *Gibson v. County of Washoe*, 290 F.3d 1175, 1185 (9th Cir. 2002).

To establish liability, Plaintiff must show: (1) Crawford was deprived of a constitutional right; (2) the City of Bakersfield had a policy; (3) that this policy amounted to deliberate indifference to his constitutional right; and (4) the policy "was the moving force behind the constitutional violation." *See*

*Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989); *see also Monell*, 436 U.S. at 690-92. A policy or custom of a government may be established when:

> (1) A longstanding practice or custom...constitutes the standard operating procedure of the local government entity;
>
> (2) The decision-making official was, as a matter of law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or
>
> (3) An official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

*Pellum*, 2011 U.S. Dist. LEXIS 10698, at *8 (quoting *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005)). Further, a governmental policy may be inferred where there is evidence of repeated constitutional violations for which the officers were not reprimanded. *Menotti*, 409 F.3d at 1147.

A policy amounts to deliberate indifference when "the need for more or different action is so obvious, and the inadequacy of the current procedure so likely to result in the violation of constitutional rights, that the policymakers can reasonably be said to have been deliberately indifferent to the need." *Mortimer v. Baca*, 594 F.3d 714, 722 (9th Cir. 2010) (quotations omitted) (citing *Oviatt v. Pearce*, 954 F.2d 1470, 1477-78 (9th Cir. 1992); *accord. Canton*, 489 U.S. at 390. To establish deliberate indifference by a government, "the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation." *Gibson*, 290 F.3d at 1186 (citing *Farmer v. Brennan*, 511 U.S. 825, 841 (1994). Plaintiff has not identified any custom or policy of the City which caused the deprivations at issue here or alleged the City had actual or constructive notice of any potential harm instituted by its polices.

Thus, for municipal liability to be imposed, the complaint must allege sufficient facts to demonstrate that an unconstitutional custom caused Crawford harm. A custom is "a widespread practice that . . . is so permanent and well-settled as to constitute a custom or usage with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (internal quotation mark omitted). Consequently, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out that policy." *Trevino v. Gates*, 99 F.3d 911,

918 (9th Cir. 1996). On the other hand, Plaintiff may establish municipal liability based upon a single event if he demonstrates that the person causing the constitutional injury was a final policymaker for the entity. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) ("only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability"). However, Plaintiff has made no allegations supporting a conclusion that the City of Bakersfield had a custom of violating civil rights. Moreover, Plaintiff has not plead allegations that any named defendant or any of the unnamed actors had final policymaking authority. Thus, Plaintiff fails to state a claim against the City of Bakersfield, and the Section 1983 claims against the City are not cognizable.

## VII.    Conclusion and Order

Plaintiff will be given <u>one</u> opportunity to file an amended complaint curing the deficiencies identified in this order. *See Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Rather than amend the complaint, Plaintiff may notify the Court in writing that he does not wish to file an amended complaint and is willing to proceed only on his claims against Officer Martin. If Plaintiff takes this approach, the Court will dismiss the other claims and defendants, and issue a summons to defendant Martin only.

If Plaintiff chooses to file an amended pleading, the amended complaint must bear the docket number assigned this case and must be labeled "First Amended Complaint." Plaintiff is informed that the Court cannot refer to a prior pleading, and that after an amended complaint is filed, the other pleadings no longer serve any function in the case. *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967) (explaining that as a general rule, an amended complaint supersedes the original complaint). Finally, Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." *King*, 814 F.2d at 567.

Based upon the foregoing, the Court **ORDERS**:

1. **Within 21 days** from the date of service of this order, Plaintiff **SHALL**:
    a. File a First Amended Complaint curing the deficiencies identified by the Court in this order, **or**
    b. Notify the Court in writing of his willingness to proceed only on the claims for

excessive force and failure to provide medical care against Officer Martin.

**Plaintiff is cautioned that if he fails to comply with this order, the action may be dismissed for failure to obey a court order pursuant to Local Rule 110.**

IT IS SO ORDERED.

Dated: **May 2, 2018**              **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE